UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Craig T. Bates,

Petitioner,

vs. REPORT AND RECOMMENDATION

R. Timothy O'Dell, P. O'Malley,
John W. Riches, II, Bonnie Hayes,
M. Mikel,

Defendants. Civ. No. 01-1045 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 18th day of January, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge upon a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A) and (B), upon the Defendants' Motion to Dismiss.

For these purposes, the Plaintiff has appeared pro se, and the Defendants have appeared by Robert M. Lewis, Esq. For reasons which follow, we recommend that the Defendants' Motion to Dismiss the Plaintiff's claims be granted, but without prejudice to their renewal when, or if, the Plaintiff has properly exhausted the administrative remedies, that are available to him, as to those claims.

(22)

JAN 18 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural History

At the time of the incidents alleged in his Amended Complaint, the Plaintiff was an inmate at the Prairie Correctional Facility ("PCF") in Appleton, Minnesota. The PCF is a privately run prison, which is owned by Appleton Prison Corporation, and licensed by the Minnesota Department of Corrections, pursuant to Minnesota Statutes Section 241.021, Subdivision 1. The Plaintiff was convicted in the State of Wisconsin, and is housed at the PCF pursuant to a contract between the prison and that State.

The Plaintiff brings this action in which he claims that the Defendants violated his First, Sixth, and Fourteenth Amendment rights, as guaranteed by the United States Constitution, by censoring and opening his legal correspondence outside of his presence, and by failing to mail outgoing legal correspondence, thus denying his access to the Courts. The Plaintiff complains of six different incidents, which relate to both his incoming, and his outgoing, legal mail. He also alleges that the named Defendants have conspired to deprive him of those Constitutional rights.

The first incident, of which the Plaintiff complains, occurred on December 15, 2000, when he "received a legal document" which had been "allegedly inadvert[e]ntly" opened by another inmate with a similar name -- Roger Bates. Amended Complaint at 3; see also Exhibit A attached to Amended Complaint. The Plaintiff did not

file a grievance concerning this incident, because he "considered the possibility of a mistake." Id.

The second incident was alleged to have occurred on January 10, 2001, when the Plaintiff received a legal document which, he maintains, had been opened and "tampered with." Amended Complaint at 3. In his grievance, the Plaintiff asserted that tape, which had been originally used to seal the envelope, had been removed, and the envelope resealed with glue. Exhibit B attached to Amended Complaint, at B1. In addition, the Plaintiff contended the contents of the envelope had been copied, as disclosed by the fact that a staple appeared to have been removed from the papers. Id. The Plaintiff later voluntarily dismissed that grievance on the grounds that there was a lack of evidence of "foul[-]play." Amended Complaint at 3.

On April 10, 2001, the Plaintiff received three legal documents, which he says were delivered "late." Id. The Plaintiff filed a grievance alleging that the envelopes, postmarked April 4, 5, and 6, 2001, should have been delivered to him on April 9, 2001, and that the officer who delivered the correspondence told the Plaintiff that he had found the mail "lying around" the office. Id., see also, Exhibit C attached to Amended Complaint, at C2. In this grievance, the Plaintiff contended that there was "some kind of foul-play concerning his legal mail." Id. The Plaintiff also

claims that, on April 24, 2001, he "received a legal document clearly identified as such, which was also pre[-]opened outside of [his] presence." Amended Complaint at 3. The Plaintiff filed a grievance concerning that incident, as well. Exhibit D, attached to Amended Complaint.

Further, the Plaintiff claims that, on May 21, 2001, he "received a letter from an Attorney which had been censored and processed through the regular inmate mail system." Amended Complaint at 4. Again, the Plaintiff filed a grievance over this letter, which noted that the envelope was clearly marked as being sent from the Minnesota Civil Liberty Union. Exhibit E attached to Amended Complaint, at E1.

On June 1, 2001, the Plaintiff took two envelopes to the mail room to be mailed. Exhibit F attached to Amended Complaint, at F1. The envelopes contained briefs to the Seventh Circuit Court of Appeals, which were due in Court on June 4, 2001. Id. He claims that he was told by the Defendant Bonnie Hayes that he did not have the funds in his account to send the mail, and that he should seek permission from his social worker to exceed his account. Id. According to the Plaintiff, his social worker approved the overdraft, but that, when he returned to the mail room on June 5, 2001, he learned, from the Defendant M. Mikel, that the correspondence had not been mailed. Id. The Plaintiff alleges that "there was no

justifiable reason" for Hayes not to send the mail, as he was not already over his allotted amount, and "was due to get [his] institutional pay on" June 7, 2001. Id. at F2.

III. Discussion

In seeking a dismissal of the Plaintiff's Complaint, the Defendants contend, in part, that the Plaintiff has failed to exhaust the administrative remedies available to him with respect to two of the incidents he contests, even though such exhaustion is required by the Prison Litigation Reform Act ("PLRA"), Title 42 U.S.C. §1997e. According to the Defendants, in the absence of exhaustion, "all claims relating to those" incidents "should be dismissed." Defendants' Memorandum of Law in Support of Motion to Dismiss.[1] Even though the Defendants' argument only contemplates the dismissal of the two noted claims, we find the absence of

[1]The Defendants also argue that the Plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted, as his Amended Complaint fails to allege the personal liability of the Defendants, fails to make sufficient allegations as to the privileged nature of the mail in question, fails to allege any injury in the form of harm or prejudice to the Plaintiff's legal rights, and fails to make sufficient allegations of any agreement, between the Defendants, that would support his conspiracy claim. However, since we find that the Plaintiff's Amended Complaint must be dismissed on exhaustion grounds, we do not now consider these alternative challenges to the Plaintiff's Complaint, and we recommend that those aspects of the Defendants' Motion to Dismiss be denied as moot. The Defendants may, of course, reassert these defenses if, or when, the Plaintiff refiles his Complaint after exhausting his remedies.

exhaustion as to these claims, requires us to dismiss the Plaintiff's claim, in its entirety, but without prejudice to his recommencement of the action if, or when, he has exhausted the administrative remedies that are available to him.

a. Standard of Review. The Supreme Court has explained that "the doctrine of exhaustion of administrative remedies is one among related doctrines * * * that govern the timing of federal-court decisionmaking," and that the "rule that parties exhaust pre-scribed administrative remedies before seeking relief from the federal courts," "is required because it serves the twin purposes of protecting the administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 144 (1992).[2] Those purposes then, serve as the backdrop to our consideration of the exhaustion requirement that Congress included in the PLRA, by enacting the following:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

[2] In actuality, the specific holding, in McCarthy v. Madigan, 503 U.S. 140 (1992), is inapplicable to our determination, as that holding has been overruled by the amendments to the PLRA, which were enacted in 1996, and which made exhaustion mandatory, rather than discretionary, as it had been when the Supreme Court decided that case. See, Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000). However, the Supreme Court's comments, in McCarthy, which concern the general purposes served by exhaustion, have not lost their legitimacy and force, and they continue to guide us on the "long * * * acknowledged" purposes of the exhaustion requirement.

> confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. §1997e(a).

The Supreme Court has construed this provision broadly, and has held that the doctrine requires prisoners to exhaust all available administrative processes, where those processes have the authority to take some remedial action, even if they cannot take the specific remedial action that is demanded by the prisoner. See, Booth v. Churner, 531 U.S. 956 (2001).

The Plaintiff has the burden of showing that he has exhausted such administrative remedy processes as are available to him. See, McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000). In order to meet this burden, and to "satisfy the requirements of §1997e(a), [a] prisoner 'must allege that he exhausted all available administrative remedies' and 'should attach to his §1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint." Id., quoting Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 2998)(per curium); see also Gill v. Herndon, 8 Fed.Appx. 585 *586, 2001 WL 476952 ** 1 (8th Cir. May 8, 2001).

Under the law of this Circuit, "[w]hen multiple prison condition claims have been joined, as in this case, the plain language of §1997e(a) requires that all available prison grievance remedies

must be exhausted as to all of the claims." Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000). When this requirement has not been met, our Court of Appeals instructs us to dismiss the plaintiff's Complaint, without prejudice to renewal after he has satisfied the PLRA's requirements. Id.

PCF follows a four-step sequential grievance system.[3] Prior to filing a formal grievance, an inmate must pursue an informal resolution of the grievance, by "attempt[ing] to discuss the matter with the staff member responsible," and then forwarding the information to his Case Manager, who conducts "an initial investigation into the inmate's complaint." Exhibit C attached to Plaintiff's Affidavit in Support of Response to Defendants' Motion for Dismissal, at 1-2. The informal process is to be completed within 30 days. Id. at 2. After discharging the requirements of the informal grievance step, an inmate "may file a Step 1 grievance with his Case Manager," by completing the required form which identifies the basis for the grievance. Id. "A staff member with appropriate knowledge of the issue and authority to act upon it" is appointed by the Warden to consider Step 1 grievances. Id. The inmate will

---

[3]We take judicial notice of the Inmate/Resident Grievance Procedures employed by PCF, as provided in the Plaintiff's Affidavit in Support of Response to Defendants' Motion for Dismissal, at Exhibit C, which the Plaintiff avers "is a true and correct copy of" PCF's grievance policy.

receive a written response to the grievance within twenty-five working days, and "may elect to file," within five days of receipt of that response, "a Step 2 grievance." Id. at 3. The Step 2 grievances are reviewed by the Inmate Grievance Manager who, again, provides a written response to the inmate within 25 days. Id. The inmate may, within 5 days thereafter, file a Step 3 form, which is reviewed by the Warden, who must provide the inmate with a written response within 25 days. Id. "The Warden may deny the grievance, and thereby terminate the grievance process," or the Warden may determine appropriate relief. Id.

Therefore, in order to have satisfied his burden of showing that he has exhausted the administrative remedies available to him, the Plaintiff must allege, and if possible, show evidence that, for each of the claims contained in his Complaint, he followed the grievance process through to a determination by the Warden. Absent such a showing, we are required, by Graves v. Norris, supra, to dismiss the Plaintiff's claim.

2. Legal Analysis. In his Amended Complaint, the Plaintiff complains of six separate incidents, between December of 2000, and June of 2001, in which there was, purportedly, interference with either his incoming, or outgoing, legal mail. In order to have satisfied his burden of showing exhaustion under the PLRA, the Plaintiff must have, at a minimum, alleged that he has fully ex-

hausted the grievance procedure as to these claims. However, the Plaintiff makes no such allegation in his Amended Complaint. Instead, the Plaintiff admits that, as to the incident of December 15, 2000, in which the Plaintiff contends that he received a legal document that had already been opened by another inmate with a similar name, that he "considered the possibility of a mistake," and did not file a grievance. Amended Complaint at 3. He also admits, as to the incident of January 10, 2001, in which he allegedly received a legal document which, he contends, had been opened and tampered with, that, although he filed a grievance, he "subsequently dismissed [that] grievance due to lack of evidence of foul[]play." Id.

Thus, the Plaintiff makes no allegation that he exhausted these claims but, instead, concedes that he never attempted an informal resolution of these complaints through the prison's grievance process. We might then, under Graves v. Norris, supra, stop our analysis at this point, and direct that the Plaintiff's claims be dismissed, for the failure to meet the PLRA's exhaustion requirements but, in the interest of not having to resume our exhaustion analysis if, or when, the Plaintiff refiles his Complaint, we will briefly address the remaining incidents being challenged.

The Plaintiff makes no allegation that he exhausted the available administrative remedies as to either the April 10, 2001, or

the April 24, 2001, incidents. Instead, the Plaintiff states only that these grievances were "never addressed." Based on this showing, we cannot find that the Plaintiff satisfied the exhaustion requirement as to those two claims. However, the Plaintiff has met the PLRA's exhaustion requirement as to the incident of May 21, 2001, when the Plaintiff, allegedly, received legal mail which had been processed through the general inmate mail, instead of coming to him through the legal mail process. Exhibit E, which is attached to the Plaintiff's Amended Complaint, contains copies of the Plaintiff's grievance, and the written denials thereof, at each of the three Steps of the grievance process. This is the type of evidence that our Court of Appeals referenced in McAlphin v. Morgan, supra, and that convinces us that the Plaintiff has, as to that claim, exhausted the available administrative remedies available to him.[4] However, as the holding in Graves requires exhaustion of all common claims, the fact that the Plaintiff exhausted the grievance

---

[4]When he filed this grievance, the Plaintiff requested that it "be consolidated with the already in progress step one grievance." Exhibit E attached to Amended Complaint, at E1. It appears that the Plaintiff sought to consolidate this grievance with the one he filed concerning the incident of April 24, 2001, as he refers to the "last occurr[e]nce," but the Plaintiff provides us with no showing that such a consolidation ever occurred. Thus, as the Plaintiff carries the burden of proving exhaustion, and since there has been no showing of a consolidation of grievances, we are obligated to assume that the grievance denials, which are evidenced by the Step forms, pertain only to the grieved incident on May 21, 2001, and not to any other grievance.

process as to one such claim, does not suffice to save his Complaint from dismissal.

As with the two incidents in April, the Plaintiff has failed to allege, in his Complaint, that he has exhausted the administrative remedy process concerning the incident on June 6, 2001, which involved his contention that the Defendant Hayes did not transmit his outgoing legal mail. Instead, the Plaintiff states that this grievance was ignored. Again, the Plaintiff has failed to provide this Court with any evidence that he satisfied the exhaustion requirement as to this claim. Further, as the Plaintiff filed the instant action on June 7, 2001, we would find any assertion, that he had exhausted the available remedial processes, to be implausible.[5]

Thus, having found that the Plaintiff has failed to exhaust not only one, but five of the six claims which underlie his Section 1983 claim, we are compelled by Graves to recommend the dismissal of the Plaintiff's Complaint without prejudice, until such time as

---

[5]The Plaintiff's Amended Complaint was filed on June 20, 2001, a mere 13 days after the Plaintiff filed his original Complaint, and only 16 days after he became aware of the action he was seeking to challenge. Even allowing this additional two weeks, during which the Plaintiff might have pursued the grievance process as to that claim, we would remain highly skeptical of any allegation, without more, that he had exhausted the administrative remedies available to him on that claim, prior to filing this action, a state of exhaustion that is required by the PLRA.

he has fully exhausted those administrative remedies available to him.[6]

NOW, THEREFORE, It is --

[6]We recognize the Plaintiff's assertion, in his response to the Defendants' Motion to Dismiss, that he was impeded, by the prison officials, in a way which is unclear, to exhaust the available remedies, and is thereby excused from the PLRA's exhaustion requirement, under the authority of Blaise v. Fenn, 48 F.3d 337, 341 (8th Cir. 1995). The Eighth Circuit has held that the exhaustion doctrine does not come into play when a prisoner has been unable to exhaust due to "interference from prison authorities" because, in such a circumstance, an administrative remedy cannot be said to be "available." Id., citing Bugley v. State, 464 N.W.2d 878, 878-880 (Iowa 1991). However, the Plaintiff makes no allegation, as to his grievances in December 15, 2000, or in January 15, 2001, that he was prevented, in any way, from grieving those complaints. Rather, he admits, expressly, that he made the choice not to pursue grievances on those issues. Thus, even if we were convinced that the Plaintiff's failure to exhaust the remaining complaints was due to interference by prison authorities, we could still not excuse his failure to exhaust the first two claims, and we would still be directed by Graves, to dismiss the Plaintiff's case. We would note, however, that the Plaintiff's bald allegation, that his grievances were ignored, or not addressed, without the provision of a detailed description of the steps the Plaintiff took to pursue the grievance process, would not convince us that his ability to meet the PLRA's exhaustion requirements was obstructed by prison authorities, particularly in light of the fact that he appeared to be able to meet PLRA's requirements, as to the incident of May 24, 2001, without apparent difficulty.

RECOMMENDED:

That the Defendants' Motion to Dismiss [Docket No 11] be GRANTED, but without prejudice, for the Plaintiff's failure to exhaust his administrative remedies.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 4, 2002,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 4, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C.

§636 to review the transcript in order to resolve all of the objections made.